# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:99-CR-00154-GCM

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| CHARLES EMMANUEL BROWN, | |
| Defendant. | |

**THIS MATTER** comes before the Court on Defendant Charles Emmanuel Brown's pro se Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) [ECF No. 175]. The United States filed a response (ECF No. 178). Mr. Brown sought leave to file a reply, and then did so with the Court's permission (ECF No. 180). The matter is now ripe for disposition. For the reasons discussed below, the Court will grant the motion.

## I. BACKGROUND

Between December 1998 and October 1999, Charles Emmanuel Brown joined a group of men in robbing banks and credit unions in Charlotte, North Carolina. ECF No. 166 at 4–7. Brown participated in seven out of nine robberies, brandishing—but not discharging—a firearm in each instance. *Id.* at 7. Once Brown was arrested after a botched final robbery, a federal grand jury charged Brown with (1) one count of conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371; (2) seven counts of armed bank robbery in violation of 18 U.S.C. § 2113(d); and (3) three counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). ECF No. 1 at 13, ECF No. 33.

Brown agreed to plead guilty pursuant to a negotiated plea agreement. ECF No. 69. In exchange for dismissal of the bank robbery counts and one of the three § 924(c) counts, Brown

pled guilty to conspiracy and two counts of violating § 924(c). *Id.* At sentencing, the Court imposed the statutory maximum sentence of 60 months for the conspiracy offense. It also imposed stacked mandatory minimum sentences for each of the § 924(c) offenses—seven years for the first, and 25 years for the second. As a result, Brown's sentence was an aggregated 444 months, or 37 years in prison.

On May 13, 2020, Brown filed a Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c)(2). ECF No. 173. Brown argued that his sentence should be reduced to time served because the First Step Act of 2018 eliminated "stacked" sentences for § 924(c) offenses. The Court denied Brown's motion without briefing from the government, noting that the relevant portion of the First Step Act was not retroactive. ECF No. 174. Brown filed the present motion a few months later, arguing that a sentence reduction was appropriate in view of the Fourth Circuit's decision in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). ECF No. 175 at 7–8.

## II. DISCUSSION

### a. Applicable Law

#### i. The First Step Act of 2018

In December 2018, Congress passed the First Step Act of 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). Although the effects of the Act ranged broadly, it did two things pertinent to this matter. First, the Act eliminated "stacked" sentences for § 924(c) offenses. And second, the Act authorized prisoners to directly petition the courts for compassionate release.

##### 1. Sentence Stacking for § 924(c) Offenses

Section 924(c) prohibits the use of a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). The penalties for violating § 924(c) are stiff. When a defendant brandishes a firearm, the first § 924(c) offense carries a mandatory minimum

2

sentence of seven years. *Id.* § (c)(1)(A)(ii). Any additional § 924(c) offense carries a mandatory minimum sentence of 25 years. *Id.* § (c)(1)(C)(i).

Prior to the passage of the First Step Act, a defendant charged with two counts of § 924(c) faced a "stacked" sentence of 34 years, even if the defendant had never previously been convicted of violating § 924(c). *See Deal v. United States*, 508 U.S. 129, 132 (1993) (upholding "stacked" sentences in § 924(c) cases). But the Act eliminated "stacking," meaning that a defendant convicted of two counts of brandishing after the Act took effect would only face two seven-year sentences, not a seven-year and a 25-year sentence. As things now stand, the 25-year mandatory sentence is only available to punish a recidivist § 924(c) offender. *See United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). The Act did not, however, make the change retroactive. *See* § 403(b), 132 Stat. at 5222.

### 2. Compassionate Release

The second relevant change effected by the First Step Act was its amendments to the compassionate release statute, 18 U.S.C. § 3582. Previously, that statute empowered the Bureau of Prisons—and *only* the Bureau of Prisons—to seek release for prisoners under exceptional circumstances. *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). But the First Step Act changed the compassionate release statute by authorizing prisoners to directly petition the courts for compassionate release. *Id.* at 235. Under the present form of the statute, a court can reduce a defendant's sentence if (1) "extraordinary and compelling reasons" warrant a reduction; (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission; and (3) the § 3553(a) sentencing factors merit a reduction. 18 U.S.C. § 3582(c)(1)(A).

### ii. *United States v. McCoy*

3

Two years after the passage of the First Step Act, the Fourth Circuit clarified the application of the compassionate release statute to "stacked" § 924(c) sentences. In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the government appealed four consolidated cases. In each case, trial judges had granted sentence reductions via the compassionate release statute, finding "extraordinary and compelling reasons" in the sheer length of the sentences, and the disparity between those sentences and those deemed appropriate in the First Step Act. *See id*. at 274. The government argued that (1) treating a disproportionately long sentence as "extraordinary and compelling" was not consistent with the Sentencing Commission's policy statements; and (2) Congress did not intend for sentence-stacking to constitute "extraordinary and compelling" reasons because it chose not to make changes to § 924(c) sentencing retroactive. *Id*. at 280.

The Fourth Circuit rejected both arguments. It first concluded that there was no existing "applicable policy statement" from the Sentencing Commission to consider. *Id*. at 281. The *McCoy* Court specifically rejected the argument that U.S.S.G § 1B1.13 was an applicable policy statement to consider. That provision, according to the Fourth Circuit, only applied to compassionate release motions initiated by the Bureau of Prisons. *Id.* at 282; *see also* U.S.S.G. § 1B1.13 cmt. 4.

In affirming the trial courts' decisions to consider § 924(c) stacked sentences as "extraordinary and compelling" reasons under the compassionate release statute, the Fourth Circuit outlined two key principles. First, a trial court "legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 285–86. The second principle is that a trial court reviewing a stacked § 924(c) sentence need not automatically reduce the sentence. *See id*. at 286. Instead, a trial court must make an "individualized assessment" of each defendant's sentence, comprising a "full consideration of the defendant's individual

4

circumstances." *Id*. The *McCoy* Court approvingly noted that the trial courts had considered the defendants' relative youth (from 19 to 24 years old) at the time of their offenses, the length of the sentence that had already been served by each defendant, and the institutional records and rehabilitative steps taken by each defendant while incarcerated. *See id*.

### iii. Section 3553 Factors

Part of the "individualized assessment" discussed in *McCoy* revolves around consideration of the so-called § 3553 factors. Under the compassionate release statute, courts must consider the factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable" in deciding whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes by the defendant; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See id*. § 3553(a).

### b. Analysis

Based on the foregoing legal standards, the Court must consider whether "extraordinary and compelling reasons" warrant a reduction in Brown's sentence. The government argues that they do not, directing the Court to U.S.S.G. § 1B1.13, which "provides specific and limited grounds for release." ECF No. 178 at 4. The Court declines to apply that guideline. As the Fourth Circuit in *McCoy* ruled, § 1B1.13 is only applicable when the Bureau of Prisons makes a compassionate release motion. *McCoy*, 981 F.3d at 282. Instead, the Court will first consider

5

Case 3:99-cr-00154-GCM   Document 181   Filed 11/08/21   Page 5 of 9

whether Brown's stacked sentences support his argument of "extraordinary and compelling reasons" before turning to an individualized assessment of the propriety of relief in his case.

At the outset, the Court notes that both parties agree that Brown's sentence was significantly more punitive in the year 2000 than it would have been in 2021. Brown was sentenced to an aggregate 37 years in prison, with 32 of those years attributable to his stacked § 924(c) charges. If he were sentenced for the same thing today, he would face 19 years in prison. The Court recognizes that this sentence—nearly double what it would be now—represents the type of "enormous disparity" that militates in favor of a sentence reduction. *See McCoy*, 981 F.3d at 285.

It is similarly the case that in absolute terms, the length of the sentence was "sheer and unusual." *Id*. at 285. As a reminder, Brown's total sentence was 444 months, with 384 months solely attributable to the §924(c) counts. Brown's criminal history was classified as a Category III. ECF No. 166 at 16. The year that he was sentenced, the average federal sentence for murder among defendants in the same criminal history category was 249 months.[1] *See* United States Sentencing Commission, *Sourcebook of Federal Sentencing Statistics, Table 14: Average Length of Imprisonment for Offenders in Each Criminal History Category by Primary Offense Category*, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2000/table-14_0.pdf, at 30 (hereinafter Sourcebook). The average sentence for kidnapping was 140.7 months. *Id.* The average sentence for robbery was 104.2 months. *Id*. Here too, the length of the sentence—when compared with similar or worse crimes—militates in favor of a reduction. In sum, the sentence stacking in Brown's case does support his claim of "extraordinary and compelling reasons."

---

[1] The average sentence for murder among defendants with the highest criminal history category of VI was 368.3 months—which was still less than the sentence that Brown received solely on the § 924(c) counts. *See* Sourcebook, *supra*, at 31.

6

Because stacked sentences alone are not automatically cause for compassionate release, the Court must conduct an "individualized assessment" of the propriety of granting relief. *McCoy*, 981 F.3d at 286. The Court first considers the nature of the offense. Brown was sentenced for robbing seven different banks and credit unions. During those robberies, Brown threatened tellers with a gun: "[I]nclude the dye pack and I'll be back." ECF No. 166 at 5. Those robberies caused great distress to the tellers—notably, five employees at one of the credit unions robbed by Brown required "a significant amount of counseling," with one employee unable to return to her position and another employee missing 57 days of work. *See id*. at 8. However, at no point in the robberies did Brown ever physically harm anyone or fire a weapon.

Brown's history and characteristics are a mixed bag. Although his criminal history category was a III, one of Brown's prior convictions was for the attempted murder of a police officer with a firearm when he was 25.[2] *See* ECF No. 166 at 16. Also, unlike the defendants in *McCoy*, who were convicted in their teens and twenties, Brown embarked on a spree of bank robberies when he was 45. These facts militate against a sentence reduction because they suggest that Brown's crimes were not the one-off product of immature judgment. *See United States v. Ross*, Criminal Action No. 5:94-cr-00005-KDB, 2021 WL 4005615, at *4 (W.D.N.C. Sept. 2, 2021).

On the other hand, Brown is now 66 years old and has health problems affecting his heart, kidneys, and knees. ECF No. 175 at 3. Those factors make him unlikely to recidivate. *See United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) ("[S]tudies demonstrate that the risk of recidivism is inversely related to an inmate's age."); United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (2017), available at

---

[2] A Virginia jury convicted Brown and imposed a 16-year sentence. ECF No. 166 at 16. Brown was paroled approximately eight years later. *Id*.

7

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf, at 23 (finding that only 6.5 percent of federal offenders 65 or older were reconvicted).

Brown also points to his exemplary prison record as evidence of rehabilitation.[3] ECF No. 175 at 3. In two decades of incarceration, Brown has not had a single disciplinary infraction. Brown completed a GED while incarcerated, along with a slew of other educational and training courses. Brown has also undertaken leadership roles in prison, including instructing other prisoners in the commercial driver's license certification program. Finally, Brown appears to have a plausible and detailed reentry plan that provides for housing and employment upon release.

Based on the totality of these factors, the Court concludes that Brown has established "extraordinary and compelling reasons" warranting a sentence reduction. It is now incumbent on the Court to determine what sentence is appropriate, given the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes by the defendant. *See* 18 U.S.C. § 3553(a)(2).

The government argues that the original sentence was appropriate in light of the offense and his criminal history. ECF No. 178 at 6. It adds that it only offered the plea agreement that it did—requiring dismissal of seven armed bank robbery counts and one of the § 924(c) counts—in reliance on the fact that Brown would receive the sentence that he received. *See id*. The government adds that Brown benefitted from the certainty of a 444-month sentence, in lieu of a sentence that

---

[3] The government argues that Congress "has made clear that 'rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason' for a modification." ECF No. 178 at 5 (citing 28 U.S.C. § 994(t)). But "there is no indication that successful rehabilitation efforts may not be considered as one among other factors under § 3582(c)(1)(A)(i) . . . ." *McCoy*, 981 F.3d at 286 n.9.

could have been "well more than the length of his natural life." *Id.* at 7. Brown responds that the government benefitted from his guilty plea, too, and cites case law in which district courts "rejected attempts by the government to argue it would have chosen a different prosecutorial strategy had different law governed at the time." ECF No. 180 at 4 (citing *United States v. Steppe*, 3:16-cr-22, ECF No. 328 (W.D. Va. Apr. 20, 2021)).

The Court observes that if Brown had been sentenced under current Guidelines for conspiracy, all seven counts of armed bank robbery, and two counts of § 924(c),[4] his aggregate Guidelines sentence would have been 87 to 108 months' imprisonment, plus a mandatory 14 years. In other words, Brown would have received 255 months on the low end of the Guidelines and 276 months on the high end. Brown has already served 301 months of credited time.

Based on its consideration of the § 3553(a) factors, the Court concludes that Brown's term of imprisonment should be reduced to time served. Consistent with the original sentence imposed, the Court will impose a three-year period of supervised release. *See* ECF No. 94 at 3.

### III. ORDER

**IT IS THEREFORE ORDERED** that Brown's Motion to Reduce Sentence (ECF No. 175) is **GRANTED**. Brown's term of imprisonment shall be **REDUCED TO TIME SERVED**, followed by three years on supervised release. The Order shall be **STAYED** for 14 days in order to permit the Bureau of Prisons and the U.S. Probation Office to make the necessary arrangements.

**SO ORDERED.**

Signed: November 8, 2021

Graham C. Mullen
United States District Judge

---

[4] Brown was charged with three counts. However, there would be little incentive for Brown to plead guilty to every single charge. In such a scenario, he may well have proceeded to trial, and may have been acquitted on some or even all of the charges.